UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MARIA V. PENA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-79 |
| | § | |
| CITY OF RIO GRANDE CITY, TEXAS, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Before the Court is the motion for summary judgment filed by Officer Rosa Salinas ("Salinas") and Lieutenant Jose Solis ("Solis") (collectively "Defendants"),[1] and the response filed by Julissa Pena ("Plaintiff").[2] Also before the Court is Plaintiff's motion to strike Defendants' motion for summary judgment,[3] Defendants' response,[4] and Plaintiff's reply.[5] In addition, Plaintiff has filed an "Unopposed Motion for Status Conference."[6]

After considering the motions, the record and the relevant authorities, the Court **DENIES** Plaintiff's motion to strike, **GRANTS** Defendants' motion for summary judgment, and **DENIES as moot** Plaintiff's motion for a status conference.

### I.    PROCEDURAL BACKGROUND

This is an excessive force action remanded to this Court from the Fifth Circuit.[7] In light of the decision by the Fifth Circuit Court of Appeals ("Appeal"),[8] the uniqueness and complexity

---

[1] Dkt. No. 42.
[2] Dkt. No. 45.
[3] Dkt. No. 43.
[4] Dkt. No. 44.
[5] Dkt. No. 46.
[6] Dkt. No. 47.
[7] *See* Dkt. Nos. 37 & 38.
[8] Dkt. No. 38.

of this case invites the Court to provide a detailed account, for purposes of clarity, of its procedural history.

### a. Initial Case in This Court

The case was originally filed in state court by Plaintiff and her parents, Mr. and Mrs. Pena, alleging that Plaintiff, a minor at the time, was unreasonably tased. On this basis, Plaintiff sued the City of Rio Grande City, Texas, and two officers, Salinas and Solis, for excessive force under 42 U.S.C. § 1983 and negligence under the Texas Tort Claims Act.[9] While the case was still in state court, Plaintiff filed two amended petitions.[10]

Upon removal[11] the Second Amended State Court Petition (hereinafter "State Court Complaint") became the live complaint in this Court.[12] Defendants filed motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12 as to all Plaintiff's claims.[13]

Plaintiff subsequently filed two motions (respectively "First Motion to Amend" and "Second Motion to Amend") seeking leave of the Court to amend the State Court Complaint.[14] Plaintiff filed as an exhibit to her First Motion to Amend a proposed amended complaint (hereinafter "Federal Complaint.")[15] Plaintiff did not attach a proposed amended complaint to her Second Motion to Amend.

In Plaintiff's First Motion to Amend, Plaintiff provided the following grounds for amending her complaint: (1) joinder of an additional defendant, Officer Humberto Vela ("Vela"), and (2) changing the style of the case to reflect that Plaintiff was no longer a minor.[16] In

---

[9] *See* Dkt. No. 3-2 (Plaintiff's original petition).
[10] *See* Dkt. No. 1-1 (state court docket sheet); Dkt. No. 6 (index of exhibits); Dkt. No. 4 (Plaintiff's First Amended State Court Petition); Dkt. No. 6-1 (Plaintiff's Second Amended State Court Petition).
[11] Dkt. No. 1.
[12] *See* Dkt. Nos. 8, 14, 19, 30.
[13] Dkt. Nos. 8, 14, & 19.
[14] *See* Dkt. No. 21 (first motion for leave to amend); Dkt. No. 22 (second motion for leave to amend.)
[15] *See* Dkt. No. 20-1.
[16] *See* Dkt. No. 20.

Plaintiff's Second Motion to Amend, she included the two above grounds, with nearly identical wording, and additionally added a third ground for amendment: to remove confidential information inadvertently attached to Plaintiff's Federal Complaint.[17]

This Court ruled on Plaintiff's two motions to amend and all Defendants' Rule 12 dismissal motions in the same opinion ("District Court Opinion").[18] The District Court Opinion acknowledged the First Motion to Amend, but based its analysis on the more recently filed motion, the Second Motion to Amend.[19]

The District Court Opinion considered Plaintiff's three grounds for amendment and found that amendment was futile as to each ground. Specifically, this Court found that Plaintiff's requests to change the style of the case and remove confidential information would not make substantive differences to her claims, and, thus, were not grounds for amendment.[20] In regards to the remaining ground, the joinder of Vela, the Court determined the claims against Vela were "substantially the same as those already alleged against Officer Solis and Salinas," which this Court concluded did not survive the legal sufficiency standard under Rule 12.[21] Thus, amendment was futile and Plaintiff was denied leave to amend.[22]

As already noted, the District Court Opinion also evaluated all the remaining claims in Plaintiff's State Court Complaint under a Rule 12 analysis and found that none of Plaintiff's allegations were sufficient to state a claim. Because the Court concluded Plaintiff's allegations were insufficient to state any claim, this Court did not reach the issue of qualified immunity.[23] Thus, the Court granted Defendants' motions seeking dismissal, dismissing the State Court

---

[17] Dkt. No. 22 pp. 2–3.
[18] Dkt. No. 30.
[19] *Id.* at p. 3.
[20] *Id.*
[21] *Id.*
[22] Dkt. No. 30.
[23] *Id.* at pp. 10–11.

Complaint in its entirety.[24] Plaintiff appealed the District Court Opinion to the Fifth Circuit.[25] The Court now turns to the Appeal.

### b. Appeal to the Fifth Circuit

Because the procedural posture of this case on remand from the Fifth Circuit is not entirely clear, the Court will first lay out in detail the substance of the Appeal and then analyze the issues presented by the Appeal.

### i. Substance of Fifth Circuit Appeal

The Appeal held that this Court abused its discretion in denying Plaintiff leave to amend.[26] The Fifth Circuit characterized the District Court Opinion's analysis regarding Plaintiff's request for leave to amend as follows: "[t]he district court looked only to [Plaintiff's] second motion to amend and found that allowing the remaining amendments proposed in that motion would be futile."[27] The Fifth Circuit further found that this Court "denied [Plaintiff] leave to amend to conform to the federal standard."[28] The Fifth Circuit concluded its analysis on whether this Court abused its discretion in denying Plaintiff leave to amend by stating that "the district court abused its discretion in penalizing [Plaintiff] for her clerical error" of failing to attach the proposed amended complaint to the Second Motion to Amend.[29]

The Fifth Circuit additionally evaluated Plaintiff's proposed amended complaint, the Federal Complaint, under a Rule 12(b)(6) standard. Specifically, the Appeal held that "the failure of the district court to review the proposed complaint does not, on its own, compel remand."[30] In the same paragraph, the Fifth Circuit stated, "the district's court's denial of leave to amend was

---

[24] *Id.*
[25] Dkt. No. 32.
[26] *Id.* at p. 5.
[27] Dkt. No. 38 pp. 2–3.
[28] *Id.* at p. 4.
[29] *Id.* at p. 5.
[30] Dkt. No. 38 p. 5.

based solely on futility. . . ."[31] The Fifth Circuit determined that because leave to amend had

been denied based on futility, the Federal Complaint should be reviewed under a *de novo* Rule

12(b)(6) standard.[32]

Accordingly, the Fifth Circuit evaluated the "sufficiency of the [Federal Complaint]" to

decide "which, if any, of [Plaintiff's] claims survive the pleadings."[33] Curiously, the Fifth Circuit

*only* analyzed the claims in the Federal Complaint that were duplicative of the claims in the State

Court Complaint, and did not analyze the only novel claim, the joinder of Vela.

The Appeal held that Plaintiff's Federal Complaint: (1) stated a cognizable excessive

force claim against Salinas for "continued tasing of [Plaintiff] once she had already hit the

ground, and was no longer resisting;"[34] (2) stated an excessive force claim against Solis for

"issuing a direct order to a subordinate to use excessive force."[35] The excessive force claims

against Salinas and Solis were remanded back to this Court "to decide in the first instance

whether [qualified immunity] defeats [Plaintiff's] proposed amended complaint."[36] The District

Court Opinion was affirmed in all other respects, and all other claims were dismissed.[37]

### ii.  Issues Presented by the Appeal

Based on the above analysis this case now offers an unclear procedural posture. The

Appeal presents three issues. First, the Fifth Circuit's determination that this Court abused its

discretion in denying Plaintiff leave to amend is not based on the analysis contained within the

District Court Opinion. Second, the Fifth Circuit determined this Court denied Plaintiff leave to

amend based on two separate—and contradictory—reasons: (1) failing to review the proposed

---

[31] *Id.* (quoting *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016)).
[32] *Id.*
[33] *Id.*
[34] *Id.* at p. 8.
[35] *Id.* at p. 10.
[36] *Id.* at p. 18.
[37] *Id.*

complaint and (2) incorrectly determining the proposed complaint failed to state a claim. Third, the Fifth Circuit made no ruling as to Plaintiff's claims against Vela and only considered claims that were already pled in Plaintiff's State Court Complaint. The Court now lays out each of these issues in detail.

## 1.  District Court Opinion Mischaracterized

As explained, the Fifth Circuit reviewed the District Court Opinion on the understanding that this Court denied leave to amend because Plaintiff did not attach the Federal Complaint to her Second Motion to Amend, and, thus, was denied leave to conform to federal pleading standards. This Court finds this to be a mischaracterization of the analysis contained within the District Court Opinion. The Court will briefly explain why.

First, the Fifth Circuit held that the District Court Opinion "looked only to [Plaintiff's] second motion to amend and found that allowing the remaining amendments proposed in that motion would be futile."[38] This characterization of the basis of the denial of leave to amend in the District Court Opinion is incorrect. The District Court Opinion clearly considered, not just the "remaining amendments" proposed in Plaintiff's Second Motion for Leave to Amend, but all grounds provided by Plaintiff as the basis for amendment.

As noted, Plaintiff's First and Second Motions to Amend were virtually identical.[39] The First Motion to Amend contained two grounds for amendment: (1) to change the style of case to reflect that Plaintiff was no longer a minor, and (2) to join Vela as a defendant.[40] The Second Motion to Amend re-urged these two grounds in nearly identical language and added a third

---

[38] Dkt. No. 38 pp. 2–3.
[39] *Compare* Dkt. No. 20 *with* Dkt. No. 22.
[40] *See* Dkt. No. 20.

ground: to remove confidential information.[41] The only ground for amendment that is unique to the Second Motion to Amend was Plaintiff's request to remove confidential information.

Therefore, if the District Court Opinion was ruling only on the "remaining amendments" proposed in the Second Motion to Amend, then the only grounds the District Court Opinion would have considered is the request to remove confidential information.

However, a review of the District Court Opinion indicates that is not the case. All three of the grounds for amendment were explicitly considered in the District Court Opinion. The District Court Opinion explained its reasons for denying Plaintiff leave to amend thus:

> As the first and third proposed amendments do not substantially change the complaint, the Court disregards same. The only substantive change is the proposed joinder of Officer Vela. However, the claims sought to be added as to Officer Vela are substantially the same as those already alleged against Solis and Salinas. As discussed below [Plaintiff's State Court Complaint] does not survive the legal sufficiency standard under Federal Rule of Civil Procedure Rule 12(b)(6). Thus, even if these amendments were considered they would not make any difference.[42]

Therefore, while the District Court Opinion explicitly ruled only on the Second Motion to Amend,[43] which was proper as it was the most recently filed motion, the District Court Opinion plainly considered all of Plaintiff's grounds for amendment, including her proposed allegations against Vela.

The Court now moves to the second inaccuracy. The Fifth Circuit Appeal found that the "the district court abused its discretion in penalizing [Plaintiff] for her clerical error" of failing to attach the proposed amended complaint to the Second Motion for Leave to Amend.[44] Again, this is an incorrect characterization of the analysis contained within the District Court Opinion.

---

[41] *See* Dkt. No. 22.
[42] Dkt. No. 30 pp. 3–4.
[43] *See id.* at p. 3 (noting that there were two motions for leave to amend and stating, "[t]he Court will consider the most recent of the two motions.").
[44] Dkt. No. 34 p. 5.

This Court did not deny Plaintiff leave to amend for the clerical error of failing to attach the Federal Complaint to the Second Motion for Leave to Amend. The District Court Opinion contains no mention of Plaintiff's failure to attach a proposed complaint to the Second Motion to Amend and did not use that as the basis for any of its analysis.

Indeed, while the District Court Opinion did not *cite* to the Federal Complaint, the Court could not have ruled that the allegations contained within Plaintiff's Federal Complaint failed to state a claim, and thus, amendment was futile, without reviewing the Federal Complaint because Plaintiff's claims against Vela were contained within the Federal Complaint. Specifically, the Court concluded that the Federal Complaint did not survive a Rule 12(b)(6) analysis stating, "[T]he claims sought to be added as to Officer Vela are substantially the same as those already alleged against Solis and Salinas . . . [which] do[] not survive the legal sufficiency standard under Federal Rule of Civil Procedure Rule 12(b)(6)."[45] In determining that the claims alleged against Vela in the Federal Complaint were "substantially the same" as those already alleged in the State Court Complaint against Solis and Salinas, this Court necessarily reviewed the Federal Complaint.

Accordingly, the District Court Opinion ruling denying leave to amend was based on a review of the Federal Complaint and a determination that allowing amendment to allege the only proposed unique claim, the joinder of Vela, would be futile, and ***not*** on Plaintiff's failure to attach the Federal Complaint to the Second Motion to Amend.

Notably, the Fifth Circuit Appeal does not address any of the actual arguments in the District Court Opinion. Specifically, the Fifth Circuit does not argue that denying Plaintiff leave to amend to remove confidential information or change the style of the complaint was an abuse of discretion. Similarly, the Fifth Circuit does not argue that Plaintiff's claims against Vela were

---

[45] *See id.* at p. 4.

not substantially the same as those against Solis and Salinas, and thus, this Court abused its discretion in denying Plaintiff leave to amend her complaint and allege such claims. Indeed, the Fifth Circuit Appeal makes *no finding as to Plaintiff's claims against Vela whatsoever.*[46]

Thus, the determination in the Appeal that this Court denied Plaintiff leave to amend because of her "clerical error" was based on analysis not contained in the District Court Opinion. The Court is forced to conclude that the Fifth Circuit neglected to review the record in reaching its determination.

### 2. Fifth Circuit Appeal Reached Contradictory Conclusions

The Court now considers the next issue: The Appeal determined that this Court abused its discretion based on two separate—and contradictory—conclusions. That is, as just explained, Appeal first determined that this Court abused its discretion because it denied Plaintiff leave to amend on the basis that Plaintiff failed to attach the Federal Complaint to her Second Motion to Amend. Thus, the Appeal determined this Court failed to review the Federal Complaint at all. However, the Appeal then *also* conducted a *de novo* review of the Federal Complaint and determined this Court abused its discretion because the Federal Complaint stated cognizable claims. Thus, the Appeal was based on the conclusions: (1) that this Court failed to review the Federal Complaint,[47] *and concurrently* (2) that this Court incorrectly reviewed the Federal Complaint.[48] This is not in line with Fifth Circuit precedent and is inherently contradictory.

The decision to grant leave to amend lies within the district court's discretion.[49] Grounds for denying leave to amend a pleading include whether there was (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue

---

[46] As the Court will explain more fully in the next sections of analysis, the Fifth Circuit neglected to review the proposed joinder of Vela. *See* Dkt. No. 38 pp. 5–18.
[47] Dkt. No. 38 p. 5.
[48] *Id.*
[49] *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998).

prejudice to the opposing party; and (5) futility of the amendment.[50] In the absence of any of these factors, a district court should freely grant the requested leave.[51]

When a district court denies leave to amend "solely" on the basis that amendment sought would be futile, the Fifth Circuit, however "applies a *de novo* standard of review identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6)."[52] Thus, denials of leave to amend are "ordinarily review[ed] for an abuse of discretion," but a review of any proposed amendment is conducted using a *de novo* standard if the district court denied leave to amend solely because it concluded that the amendment sought would be futile.[53]

However, this phrasing is misleading because although the standards are applied alternatively, they are actually part of the same standard of review: abuse of discretion. Whether an amendment is futile *is a part of* the discretion analysis. The Fifth Circuit *either* determines that a district court abused its discretion in denying leave to amend for other grounds, *or* conducts a *de novo* review of the proposed complaint to determine if the district court abused its discretion, but not both.[54] In accordance with this, the Fifth Circuit denotes the difference between the two legal standards with language such as "but," and "however."[55]

---

[50] *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).

[51] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[52] *Armendariz v. Chowaiki*, 683 F. App'x 338, 341 (5th Cir. 2017) (quotations and citations omitted).

[53] *Id.*

[54] *See, e.g., City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).

[55] This Court could find no other case in which the Fifth Circuit applied both standards simultaneously. Further, this Court's review found that the Fifth Circuit denotes the difference between the two standards with language such as "but," and "however." This indicates that the standards are not applied simultaneously. *See, e.g., United States v. Lamid*, 663 F. App'x 319, 325 (5th Cir. 2016) ("In general, we review the denial of a motion for leave to amend a pleading under an abuse-of-discretion standard. ***But when*** the district court's denial of leave to amend was based solely on futility, we apply a de novo standard of review identical, in practice to the standard used for reviewing dismissal under Rule 12(b)(6).") (quotations and citations omitted) (emphasis added); *Osborne v. Travis Cty.*, 638 F. App'x 290, 292 (5th Cir. 2016) ("We review a denial of a motion to file an amended pleading for abuse of discretion, ***but when***, as here, the court's decision is based solely on futility, we review the matter de novo, using the standard for a motion to dismiss for failure to state a claim.") (quotations and citations omitted); *Vallery v. Am. Girl, L.L.C.*, 697 F. App'x 821, 823 (5th Cir. 2017) ("In general, we review a district court's denial of a motion to file an amended complaint under an abuse of discretion standard. When the district court's denial is based solely on futility, ***however***, we apply a de novo standard of review identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6).") (quotations and citations omitted) (emphasis added).

Considered thusly, it makes little sense to sequentially determine a district court abused its discretion *and then also* review the proposed amended complaint to determine whether the district court had abused its discretion. For example, if the district court failed to review any proposed amendments, and no other factors justify denying leave to amend, then the district court may be abusing its discretion if it denies leave to amend.[56] In those circumstances, the case is remanded back to the district court for the district court to review the proposed amendment in the first instance.[57]

Alternatively, if a district court denied leave to amend on the basis of futility for a complaint that stated a claim, then the district court would be abusing its discretion *because* amendment would *not* be futile; however, if the amendment sought *was* futile then a district court would be within its discretion to deny leave to amend.[58] Thus, when leave to amend is denied based on futility, the Fifth Circuit conducts a *de novo* review of the proposed amendments to determine if they are futile as a part of its determination of whether the district court has abused its discretion.

Here, however, the Fifth Circuit concluded this Court abused its discretion because it "penalize[ed]" Plaintiff for a clerical error for failing to attach the proposed complaint,[59] and had "fail[ed] . . . to review the proposed complaint."[60] But in the next sentence the Fifth Circuit

---

[56] *See Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (noting that, "[t]he Supreme Court has explicitly disapproved of denying leave to amend without adequate justification.") (quoting *Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 245 (5th Cir. 1997)).

[57] *See, e.g., Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) (finding an abuse of discretion where leave to amend was denied without explanation by the district court and remanding the case back to the district court to resume litigation).

[58] *See Marucci Sports, L.L.C. v. NCAA,* 751 F.3d 368, 379 (5th Cir. 2014) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile.").

[59] Dkt. No. 38 p. 5.

[60] *Id.* (emphasis added).

determined that this Court's decision to deny leave to amend was "based *solely* on futility," and thus the Federal Complaint should be evaluated under a Rule 12(b)(6) analysis.[61]

The Fifth Circuit analysis presents an irreconcilable contradiction. It provides two opposing grounds for determining this Court abused its discretion. How could the District Court Opinion both fail to review the proposed complaint and determine the same complaint failed to state a claim? Similarly, how could this Court's decision to deny Plaintiff leave to amend be based on "penalizing" Plaintiff for her failure to attach the proposed complaint and also be "solely" because the proposed complaint failed to state a claim? The Appeal contains no analysis upon which this contradiction can be reconciled.

Additionally, if the Fifth Circuit was correct in its conclusion that this Court never reviewed the proposed complaint, then the Appeal reviewed the Federal Complaint before this Court had done so. Such a review in the first instance would not be in keeping with the general rule that a federal appellate court does not take up an issue not considered by the trial court without reason.[62] The Appeal gives no indication as to why it would be exercising its discretion in this manner.[63] Thus, the Fifth Circuit was *either* conducting an analysis of the Federal Complaint in the first instance and providing no grounds for doing so, *or* was negating its own conclusion that the District Court Opinion had never reviewed the Federal Complaint.

In short, the application of the two standards renders the findings of the Appeal contradictory. This contradiction is not clarified by the remainder of the Appeal.

---

[61] *Id.*

[62] *See Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *see also Hormel v. Helvering*, 312 U.S. 552, 556 1037 (1941) (finding appellate review should only consider issues already raised in lower courts is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues… [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.").

[63] *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008) (finding that the determination to consider an issue in the first instance in an appellate court is "left to discretion of the courts of appeals, to be exercised on the facts of individual cases . . . .").

### 3.  Claims Against Vela in Federal Complaint Were Never Analyzed, but All Claims in State Court Complaint Were

The Court now moves to the Fifth Circuit's Rule 12(b)(6) analysis of the Federal Complaint. In this analysis, the Appeal did not evaluate the joinder of Vela, the only novel claim in the Federal Complaint, and instead evaluated claims duplicative of those alleged in the State Court Complaint. It thus appears that although the Appeal stated it was reviewing the District Court Opinion's ruling to deny Plaintiff leave to amend on the basis of futility, the Fifth Circuit Appeal actually conducted its analysis as if it was reviewing the District Court Opinion's ruling to grant Defendants' motions to dismiss. This leaves the procedural status of the case unclear. The Court will explain.

Review of a motion to dismiss and a denial of leave to amend for futility are both conducted under a *de novo* standard, making the analysis essentially the same.[64]  However, the differing analysis matters in terms of *which complaint* is analyzed.

As already explained, when the Fifth Circuit reviews denial of a motion to amend for futility, as the Fifth Circuit did here, it only analyzes any additional claims that are alleged in the proposed complaint that are not contained in the live pleading.[65] This makes sense. A denial of a motion for leave to amend a complaint based on futility indicates that there is no reason to allow amendment of the live complaint because any additional claims do not state claims. Thus, only additional claims need to be considered. Accordingly, in review of a denial of leave to amend

---

[64] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.")).

[65] *See, e.g., Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 593 (5th Cir. 2016) (considering only the "proposed amendments" and determining they "would not have been futile."); *Hernandez v. Bailey*, 716 F. App'x 298, 303 (5th Cir. 2018) (reviewing only the claims proposed in the amended complaint that were not reviewed by the district court); *Hollier v. Watson*, 605 F. App'x 255, 259 (5th Cir. 2015) (reviewing an amended complaint and finding it contained the same causes of action as the dismissed complaint); *HansaWorld USA, Inc. v. Carpenter*, 662 F. App'x 259, 262 (5th Cir. 2016) (reviewing a denial for leave to amend on the basis of futility and only considering the propose malicious interference with business relations claim).

based on futility, additional claims in the *proposed* complaint are considered, and if the additional claims survive a 12(b)(6) analysis, leave to amend is granted and the *proposed* complaint is sent back to the district court for further proceedings.

In contrast, when reviewing a grant of a motion to dismiss, the appellate court evaluates whether the claims alleged in the plaintiff's *live* complaint survive a Rule 12(b)(6) analysis.[66] If any claims are deemed to state a claim, the *live* complaint is remanded.

In sum, if the Fifth Circuit was reviewing whether leave to amend should have been denied on the basis of futility, then the analysis would have been confined to the novel claim against Vela as stated in the Federal Complaint. However, if the Fifth Circuit was reviewing whether this Court had erred in granting Defendants' motions to dismiss, then the Fifth Circuit should have reviewed the State Court Complaint.

Here, the Fifth Circuit did the *exact opposite*. In its analysis of this Court's denial of leave to amend based on futility, the Fifth Circuit *did not evaluate* the only novel claim, the proposed joinder of Vela, but *instead* evaluated all the other claims that were *already stated* in Plaintiff's State Court Complaint.[67] In short, the Fifth Circuit Appeal considered the claims made in the State Court Complaint, but *as alleged in the Federal Complaint*.

Thus, it appears that although the Fifth Circuit Appeal stated it was reviewing this Court's decision to deny Plaintiff leave to appeal solely on the basis of futility, the Fifth Circuit Appeal actually conducted the analysis that would be proper if it were reviewing this Court's decision to grant Defendants' motions to dismiss. However, Defendant's motions to dismiss were filed *against the State Court Complaint*, and the analysis in the Fifth Circuit Appeal was of *the Federal Complaint*.

---

[66] *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *SCLC v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001).
[67] *See* Dkt. No. 38 pp. 5–18.

Similarly, the Fifth Circuit remanded the issue of qualified immunity for this Court to make a determination in the first instance.[68] However, qualified immunity is an affirmative defense, one that was *only* raised in Defendants' motions to dismiss that were filed *against the State Court Complaint*.[69] Thus, it appears the Fifth Circuit must have applied Defendants' motions to dismiss to the Federal Complaint.

The Fifth Circuit Appeal provides no procedural or judicial justification for conducting the analysis in this way, and the Court can see none. Again, the Court is forced to conclude that this analysis was merely done in error.

As a result of the analysis in the Appeal, this case now presents an uncertain procedural posture. Specifically, it is unclear to the parties (and this Court): (1) the current status of Defendants' motions to dismiss, which were only filed as to the State Court Complaint, but were applied to the Federal Complaint; and (2) the status of Plaintiff's claims against Vela. It is with this procedural posture that the case was remanded back to this Court. The Court turns now to the history of the case in this Court after remand.

### a. Procedural History After Remand

After this case was remanded back to this Court, the Court then held a status conference to discuss how to proceed in light of the Fifth Circuit Appeal.[70] Defendants indicated they wished to file a motion for summary judgment with regard to the issue of qualified immunity.[71] The Court issued a scheduling order with deadlines for filing such a summary judgment motion.[72] At the status conference, the unaddressed claims against officer Vela were raised, but

---

[68] *Id.* at p. 18.
[69] *See* Dkt. Nos. 8, 14, 19.
[70] *See* Minute Order entered February 26, 2018.
[71] *Id.*
[72] *Id.*

Plaintiff's counsel stated he needed more time to determine how to proceed regarding the claims against Vela.[73] The Federal Complaint[74] was docketed as the live pleading.[75]

Defendants timely submitted a motion for summary judgment pursuant to Rule 56.[76] Defendants seek dismissal of all Plaintiff's remaining claims.[77] Plaintiff responded.[78] Plaintiff additionally filed a "Motion to Strike [Defendants'] Motion for Summary Judgment."[79] Defendants responded,[80] and Plaintiff replied.[81]

## II.   PLAINTIFF'S MOTION TO STRIKE

Because granting Plaintiff's motion to strike Defendant's motion for summary judgment could eliminate the need to consider the substance of the motion for summary judgment, the Court will first consider Plaintiff's motion to strike.

Plaintiff requests the Court strike Defendants' motion for summary judgment because: (1) Defendants' motions to dismiss are moot; (2) Defendant has not filed an answer; (3) thus under Rule 8(b)(6) Defendant has admitted all of Plaintiff's allegations; and (4) qualified immunity is an affirmative defense and Defendants have no pleading that asserts this defense.[82] The essence of Plaintiff's argument is that Defendants should have filed an answer to the Federal Complaint when it was docketed by this Court as the live pleading, and that in response to Defendants' failure the Court should now strike Defendants' motion for summary judgment.

---

[73] *Id.*
[74] Dkt. No. 41.
[75] Dkt. No. 40.
[76] Dkt. No. 42.
[77] *Id.*
[78] Dkt. No. 45.
[79] Dkt. No. 43.
[80] Dkt. No. 44.
[81] Dkt. No. 46.
[82] *See* Dkt. No. 46.

Defendants argue that they are not required to file an answer until after the Court rules on the issue of qualified immunity, and that they did not waive qualified immunity because they raised qualified immunity in their motions to dismiss.[83]

First, the Court turns to Plaintiff's contention that after the Court docketed Plaintiff's Federal Complaint that Defendants' motions to dismiss were variously "mooted," "denied," "dismissed," "abandoned," or "waived."[84]

It is here that the Fifth Circuit Appeal causes confusion. Defendants' motions to dismiss, were only filed as to Plaintiff's State Court Complaint.[85] Upon remand, this Court docketed the Federal Complaint,[86] as it must, however it remains unclear to this Court, and the parties, exactly the status of Defendants' previous motions to dismiss. Ordinarily when an amended pleading is filed, any previously filed motions to dismiss are mooted.[87] Accordingly, Defendants' motions would typically be mooted once the Federal Complaint was docketed.

However, qualified immunity is an affirmative defense that must be raised, and here, it was raised in the motions to dismiss which were filed as to the State Court Complaint. As already explained, the Fifth Circuit Appeal did not review the allegations in Plaintiff's State Court Complaint, it only reviewed the Federal Complaint. After review, the Fifth Circuit specifically remanded the issue of qualified immunity back to this Court.[88] But the issue of qualified immunity had never been raised in regards to Plaintiff's Federal Complaint. It had only been raised in Defendants' motions to dismiss, which were all directed at the Plaintiff's State

---

[83] Dkt. No. 44 p. 3, ¶ 2.03.
[84] *See* Dkt. Nos. 43 & 46.
[85] *See* Dkt. Nos. 8, 14, & 19.
[86] *See* Dkt. No. 40.
[87] *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) ("[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.").
[88] Dkt. No. 38 p. 18.

Court Complaint. Additionally, the Fifth Circuit specifically instructed this Court to determine if qualified immunity applied to the Plaintiff's Federal Complaint.

Based on this, as already explained, the apparent procedural posture of this case is that the Federal Complaint was remanded to this Court after the Fifth Circuit applied Defendants' motions to dismiss to the Federal Complaint. Thus, it seems the motions to dismiss are pending. Accordingly, the Court considers the motions to dismiss applied to the Federal Complaint.

Additionally, as the only issue that was raised in the motions to dismiss that was not disposed of is the issue of qualified immunity, these motions consider the same substantive issues as the instant motion for summary judgment. Therefore, the Court will consider them all at the same time. This makes sense because a motion to dismiss is converted to a motion for summary judgment if evidence outside the pleadings is attached.[89] Thus, the Court concludes that Defendants' motions to dismiss are currently pending disposition and are not waived, moot, dismissed, or denied.

The Court now applies this understanding to Plaintiff's motion and concludes Plaintiff is not entitled to any of the relief she seeks. In regards to Plaintiff's assertion that Defendants have failed to answer, the Court finds that Defendants have not missed the deadline to answer the complaint. Rule 15(a)(3) provides that "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."[90] However, a timely motion to dismiss automatically extends the time under which a defendant must file an answer until fourteen days after the Court's decision on the motion.[91] The Court has

---

[89] Fed. R. Civ. P. 12(d).
[90] Fed. R. Civ. P. 15(a)(3).
[91] Fed. R. Civ. P. 12(a)(4); *see also* 10A Alan Wright et al., Federal Practice & Procedure § 2718 (4th ed.).

already decided the Fifth Circuit has applied the motions to dismiss to the Federal Complaint, thus tolling the deadline for Defendants to file an answer.[92]

Additionally, regardless of the status of the motions to dismiss, the Court finds Defendants have not failed to answer the complaint. While there is no parallel rule governing a defendant's obligation to answer a complaint when he files a pre-answer motion for summary judgment pursuant to Rule 56, most courts have determined that Rule 12(a)(4) operates by analogy to a defendant that has filed a pre-answer summary judgment motion and, therefore, have declined to find a defendant in default who fails to file an answer until after disposition of the motion.[93] The Court finds, in this circumstance, applying 12(a)(4) analogously is in keeping with judicial policy favoring the disposition of cases on their merits and discouraging "termination of litigation by procedural maneuver."[94] Thus, even if the motions to dismiss had not been applied to the Federal complaint, the timely filed motion for summary judgment has tolled Defendants' deadline to answer.

Even granting Plaintiff's contention that Defendants had failed to answer, the proper relief for a failure to answer a complaint is an entry of default, not to strike a substantive motion. Plaintiff cites to no authority that would require the Court to strike Defendants' motion. Under Rule 56 there is no express deadline governing when a motion for summary judgment may be filed. Instead, a defending party may file motion for summary judgment "at any time, until 30

---

[92] *See* Fed. R. Civ. P. 12(a)(4).

[93] *See, e.g., Rashidi v. Albright*, 818 F. Supp. 1354, 1356 (D. Nev. 1993) ("Although Rule 12 does not specifically allow for a summary judgment motion to toll the running of the period within which a responsive pleading must be filed, by analogy the language would seem to apply[.]"); *see also Poe*, 15 F.R.D. at 88 (holding that the right to an extension of time to file a responsive pleading until determination of a motion for summary judgment is not a definite and fixed right but a matter to be granted or denied under the rule determining the time of filing of pleadings from a consideration of all the circumstances and a showing of good cause for postponement).

[94] *Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("The Federal Rules of Civil Procedure are designed for the just, speedy, and inexpensive disposition of cases on their merits . . . .").

days after the close of all discovery."[95] Federal "courts and commentators have acknowledged that no answer need be filed before a defendant's motion for summary judgment may be entertained."[96]

Here, Defendants have complied with all Court scheduled deadlines, have given no indication of delay or bad faith and complied with the Federal Rules of Civil Procedure. The Court decided, after a status conference with both parties, to consider whether Defendants were entitled to a defense of qualified immunity via a motion for summary judgment filed by Defendant.[97] Defendants then timely filed the motion in accordance with the scheduling order provided by this Court.[98] Thus, the Court finds Defendants' motion for summary judgment was filed properly and finds no cause to strike the motion.

Indeed, even assuming, *arguendo*, that Defendants have not provided a timely answer to the complaint *and* Plaintiff was requesting an entry of default, Defendants have in all other respects vigorously defended this case, and default would not be warranted here. Default is a drastic action and disfavored by Courts.[99]

Finally, the Court finds Defendants have not waived the issue of qualified immunity, even if the motions to dismiss were not applied to the Federal Complaint. As an affirmative

---

[95] Fed. R. Civ. P. 56(b).
[96] *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 404 (6th Cir. 1987); *see First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 291 (1968) (Supreme Court affirmed summary judgment in favor of a defendant who had not filed an answer, even though the litigation was six years old when defendant filed the motion for summary judgment); *Southern Pac. Transp. Co. v. National Molasses Co.*, 540 F.2d 213, 214 (5th Cir. 1976) (court allowed summary judgment motion before answer filed; however, motion treated as Fed. R. Civ. P. 12(b)(6) motion because not accompanied by affidavits); *Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 522 (3d Cir. 1973) (summary judgment motion may be made before pleading to the complaint); *see also Poe v. Cristina Copper Mines, Inc.*, 15 F.R.D. 85, 87 (D. Del. 1953) (finding that the filing of a motion for summary judgment tolls the deadline to file an answer).
[97] *See* Minute Entry dated February 26, 2018.
[98] *See id.*
[99] *See* 10 Charles A. Wright et al., Federal Practice & Procedure § 2681, at 402 (2d ed. 1983); *see also Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (footnotes omitted) (noting that default judgments are "drastic" and disfavored).

defense, qualified immunity must be pled and proved by the defendant.[100] Generally, under Rule 8(c) affirmative defenses must be raised in the first responsive pleading. However, "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal."[101] An affirmative defense is not waived if the defendant "raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond."[102] The Fifth Circuit has found no waiver "where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial."[103]

Here, Plaintiff has demonstrated no prejudice and certainly could not be surprised by the assertion of qualified immunity as a defense. The case was specifically remanded back to this Court to determine whether Plaintiff's complaint overcame qualified immunity, and this Court held a status conference, to which Plaintiff was a party, to determine how to proceed *on the issue of qualified immunity*. Accordingly, the Court finds Plaintiff had sufficient notice to properly defend against the issue of qualified immunity, and that Defendants have not waived their qualified immunity defense. This is consistent with the Supreme Court's interpretation  of the purpose of Rule 8(c), which is to give the opposing party notice of the affirmative defense and a chance to argue why it should not apply.[104] Plaintiff has been afforded that chance.

Based on the foregoing, the Court **DENIES** Plaintiff's motion to strike Defendants' motion for summary judgment. The Court now turns to the substance of the motion.

---

[100] *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); Fed. R. Civ. P. 8(c).
[101] *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).
[102] *Id*. at 856.
[103] *Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009).
[104] *See Blonder-Tongue Lab. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971).

### III.   Defendants' Motion for Summary Judgment

### a.   Factual Background[105]

On the morning of June 30, 2014, Vela, a juvenile officer for the City of Rio Grande, met with Mr. and Mrs. Pena, the parents of—then seventeen-year-old—Plaintiff.[106] Vela met with Mr. and Mrs. Pena because Plaintiff and her younger sister had both run away from home the night before.[107] Neither girls were criminal suspects.[108]

Mr. Pena and Vela both testified that Mr. Pena requested Vela talk to his daughters when they were found.[109] Mr. Pena stated in his deposition that he "told [Vela] to talk to [Plaintiff], right, as if [Vela] was going to take her in, but not take her in."[110] Mr. Pena also stated he asked Vela to "[j]ust give [Plaintiff] a scare."[111] Later that afternoon, Mr. Pena and Plaintiff arrived at the Rio Grande City Police Department and encountered Vela outside.[112]

The parties provide slightly differing accounts of what occurred after Plaintiff and Mr. Pena arrived. Vela testified he was in his patrol car parked outside the Rio Grande City Police Department when he saw Mr. Pena driving "like really fast into the parking lot"[113] of the police department "and then "[Plaintiff] just ran out of the car,"[114] and wanted to go out into Main Street," which is "a high traffic street."[115] Vela further testified that Mr. Pena "grabbed" Plaintiff and placed Plaintiff inside the car.[116]

---

[105] All facts are undisputed unless otherwise indicated.
[106] Dkt. No. 42 Vela Dep. 11:8–17.
[107] *Id.*
[108] Dkt. No. 45-1 Vela Dep. 24:20–22, 27:16–18.
[109] Dkt. No. 45-1 Vela Dep. 29:12–19; Dkt. No. 45-3 Daniel Pena Dep. 34:1–35:21.
[110] Dkt. No. 45-3 Daniel Pena Dep.  35:5-6.
[111] *Id.* 34:22.
[112] *See* Dkt. No. 42 Vela Dep. 34:9–25; Dkt. No. 45-4 Plaintiff Dep. 34:4–17.
[113] Dkt. No. 42 Vela Dep. 34:9–10.
[114] *Id.* 38:23.
[115] *Id.* 39:2–24.
[116] *Id.* 51:1–52:2.

Plaintiff's testimony of this portion of the incident differs. Plaintiff testified she "never got out and my dad [Mr. Pena] never grabbed me."[117] She stated that her father "got out of the vehicle and he called [Vela] to come over."[118]

Regardless of the beginning of the altercation, at some time after Plaintiff and Mr. Pena arrived at the police department, Vela called for back-up and Officers Salinas and Solis arrived.[119] Salinas was in the police department when the incident began; Vela called for assistance, and then she, Solis, and another officer ran from the police department to the scene at the corner of Main Street and Washington Street.[120]

The parties' explanations of events again differ slightly at this point. It is undisputed that Plaintiff was in the back seat of the car, and Vela was attempting to detain Plaintiff.[121] However, the location of Vela and the extent of contact between Vela and Plaintiff is disputed.

Although the parties agree there was contact between Vela and Plaintiff, they disagree about the extent and violence of that contact. Vela testified that at one point he was inside the car with Plaintiff,[122] and that as he attempted to detain Plaintiff, Plaintiff "struck" and "kicked" him several times.[123] Salinas testified when she arrived at the scene, she saw Vela attempting to detain Plaintiff, who was inside the vehicle,[124] and she saw Vela's hands in the car, but Vela was standing outside the car.[125] Further Salinas testified Plaintiff "kept on kicking" Vela, and he was unable to place handcuffs on her.[126] Solis testified Plaintiff "push[ed]" Vela,[127] and that

---

[117] Dkt. No. 45-4 Plaintiff Dep. 34:11–12.
[118] *Id.* 34:15–16
[119] *See* Dkt. No. 42 Salinas Dep. 47:19–24; Dkt. No. 45-4 Plaintiff Dep. 45:10–48:5; Vela Dep.
[120] Dkt. No. 42 Salinas Dep. 47:19–24.
[121] *See* Dkt. No. 45-4 Plaintiff Dep. 43:2, Dkt. No. 42 Vela Dep. 50:8–9.
[122] Dkt. No. 42 Vela Dep. 50:24–25.
[123] *Id.* 53:1.
[124] Dkt. No. 42 Salinas Dep. 43:5–20.
[125] Dkt. No. 45-5 Salinas Dep. 148:3–6.
[126] *Id.* 46:12–16.
[127] Dkt. No. 42 Solis Dep. 52:1–3.

Plaintiff's open hands made contact with Vela.[128]  In contrast, Plaintiff testified that Vela "kind of got into the vehicle a little bit,"[129] but that her father was in the car next to her, between her and Vela.[130] Plaintiff additionally includes an affidavit in which Plaintiff swears she did not kick Vela or any officer of the Rio Grande City Police Department.[131]

Eventually, at some time after Salinas arrived, it is undisputed that Plaintiff opened the car door and began running down Washington Street southbound towards Mirasoles Street.[132] The parties do not disagree as to the events that occurred thereafter. Vela told Salinas to "get her" and Salinas, who was nearest to Plaintiff, chased after Plaintiff.[133] As Plaintiff was running towards Mirasoles Street, Salinas and Solis testified they saw a small passenger car going "quickly" or "pretty fast" down Mirasoles Street.[134]

At some point, Solis yelled out "tase, tase, tase."[135] Salinas testified that although she was the closest officer to Plaintiff, Plaintiff was "far ahead" of her.[136] Salinas then deployed her Taser.[137] Salinas did not stop to deploy her Taser, but fired it as she was moving.[138] Both prongs hit Plaintiff causing her to fall to the ground immediately, next to a stop sign on Washington Street, a few feet from Mirasoles Street.[139] The Taser was deployed once, for a single five second charge.[140]

---

[128] *Id.* 112:23–113:1.
[129] Dkt. No. 45-4 Plaintiff Dep. 35:2.
[130] *Id.* 42:1–45:4.
[131] Dkt. No. 45-9.
[132] Dkt. No. 42 Vela Dep. 59:7–14; Salinas Dep. 97:1–5.
[133] Dkt. No. 45-5 Salinas Dep. 97:23–98:8.
[134] *Id.* 123:11–16; Solis Dep. 124:24–125:3.
[135] Dkt. No. 45-5 Salinas Dep. 58:22.
[136]*Id.* 122:1–25.
[137] *Id.* 99:3–14.
[138] *Id.* 105:9–15.
[139] Dkt. No. 45-5 Salinas Dep. 99:3–14; Dkt. No. 42 Solis Dep. 126:19–127:6, 136:10–14; *see also* pp. 82–83 (Exhibits 7 & 8, photographs of Mirasoles and Washington intersection).
[140] Dkt. No. 42 Salinas Dep. 99:16–25; pp. 121–122 (Exhibit D, Taser Report).

Salinas testified she was "running behind [Plaintiff]" and "did not have enough time to stop and take out  my taser and deploy it for better aim" because "if I would have stopped . . . [Plaintiff] would have gotten ran over."[141] Solis similarly testified that "[e]verything happened so quickly" and if Salinas had not tased Plaintiff, he "honestly believed [Plaintiff] would have been run over."[142] Plaintiff was arrested later that day after she was medically cleared.[143]

### i.  Police Report Discrepancy

Before moving to the analysis of these facts, Plaintiff raises an issue with one piece of summary judgment evidence. Plaintiff points to two versions of "Incident Report #20140600593" which was created to document the events at issue by the Rio Grande City Police Department[144] and argues that these documents support a finding of "fabricated government records and false testimony."[145]

These documents were referenced in the depositions and one copy was attached to Plaintiff's complaint.[146] Both appear to be Police Reports of the incident. From the face of these documents it appears one was faxed on September 15, 2014 ("September Report),[147] and one was retrieved from the internet on August 26, 2016 ("August Report").[148] Although Plaintiff does not provide any indication of the provenance or authenticity of these documents, the Court nonetheless concludes they both satisfy the requirement to be considered public documents under

---

[141] Dkt. No. 42 Salinas Dep. 102:13–17.
[142] Dkt. No. 42 Solis Dep. 67:15–16.
[143] *Id.* 92:25–93:10.
[144] *See* Dkt. No. 45-5 pp. 48–57 (Exhibits 1 & 2).
[145] Dkt. No. 45 p. 32, ¶ 86.
[146] *See* Dkt. No. 41 pp. 30–34.
[147] *See* Dkt. No. 45-5 pp. 53–57.
[148] *See id.* at pp. 48–52.

Federal Rule of Evidence 803(8)(C).[149] Additionally, Defendants do not object. Thus, the reports are proper summary judgment evidence. The Court now considers the substance of these reports. Plaintiff identifies a number of discrepancies between the September and August Reports and argues that these differences support an inference that both documents were fabricated, and further, that the testimony of Vela, Salinas, and Solis is false.[150]

Although the documents have the same reference number, 20140600593, the documents contain a number of differences.[151] The majority of the differences identified by Plaintiff involve small discrepancies that do implicate the facts at issue; they mostly involved numerical discrepancies and appear to be differences in how database information is displayed.[152] However, Plaintiff does point to one difference regarding the narratives contained in the Report. Each Report includes narrative accounts by Vela, Solis, and Salinas.[153]

The accounts in the September Report and the August Report are substantively identical except for a small section in Salinas' narrative. The discrepancy involves whether Salinas stopped before she deployed her taser or if she was in motion. The September Report contains the following sentences:

> Due to the fact that I [Salinas] was running behind [Plaintiff] I did not have enough time to stop and take out  my taser and deploy it for a better aim. If I had stopped she would have gotten run over.[154]

The August Report contains a slightly altered version:

> I [Salinas] was running behind [Plaintiff] and I still had enough time to stop and take out my taser and deploy it for a better aim.[155]

---

[149] In the Fifth Circuit, Federal Rule of Evidence 803(8)(C) reports are presumed to be trustworthy and admissible; therefore, it is the burden of the party opposing admission to demonstrate a lack of trustworthiness. *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991).
[150] *See* Dkt. No. 45 p. 29, ¶ 76.
[151] *Compare* Dkt. No. 45-5 pp. 48–52 (August Report) *with* Dkt. No. 45-5 pp. 53–57 (September Report).
[152] *See* Dkt. No. 45 p. 29, ¶ 76.
[153] *See* Dkt. No. 45-5 pp. 48–57.
[154] Dkt. No. 45-5 p. 55.
[155] *Id.* at pp. 50–51.

When questioned in her deposition regarding why there was a difference between the two reports Salinas stated:

> Because the first one had to be done as soon as possible, and the second was to—they were going to—check it and make sure we did everything correct.[156]

Salinas clarified that "they" is in reference to her supervisors at Rio Grande City Police Department,[157] but that she wrote both narratives.[158] Further, in her deposition Salinas acknowledges that the version in the September Report is more accurate, and that she did not, in fact, stop to deploy her taser for better aim, but fired it as she was running.[159]

Plaintiff argues that these discrepancies amount to a factual dispute which precludes summary judgment.[160] Specifically, Plaintiff asserts the discrepancies indicate there was a conspiracy by the Rio Grande City Police, including Defendants Solis and Salinas, to fabricate the basis of the entire incident—that Plaintiff was physically resisting detainment.[161]

The Court disagrees that these discrepancies support finding a conspiracy such that all of Salinas' narrative and deposition testimony are factually disputed. Indeed, the discrepancy does not concern whether Plaintiff was resisting detainment, but is entirely concerned with whether Salinas stopped to deploy her Taser or deployed it while she was moving. Salinas admitted that the sentence she wrote first, the one contained in the September Report, is more accurate. Notably, Defendants do not contest this. Thus, it is undisputed that Salinas fired her Taser as she was running.

---

[156] Dkt. No. 45-5 Salinas Dep. 92:20–93:1.
[157] Dkt. No. 45-5 Salinas Dep. 93:1–95:30.
[158] Dkt. No. 45-5 Salinas Dep. 102:21–24.
[159] Dkt. No. 45-5 Salinas Dep. 105:9–15.
[160] Dkt. No. 45 p. 30, ¶¶ 77–78.
[161] *Id.*

Accordingly, the Court finds that Plaintiff's assertion that the two Reports indicate that the entirety of Salinas', Solis', and Vela's testimonies were fabricated is conclusory and not supported by the evidence. Plaintiff does not point to any discrepancy within any other narrative that would support finding that Vela, Solis, and Salinas fabricated the Reports or falsified their testimonies. Specifically, Plaintiff points to no material difference between the narratives in the Reports and the testimony given by any officer that would support finding a factual dispute regarding whether Plaintiff was resisting detainment. Plaintiff must bring evidence showing the issue is in dispute. Plaintiff's mere assertion that the statements made by the officers are fabricated is insufficient to establish a factual dispute. The Court now moves to its analysis.

### b.  Legal Standard

Under Rule 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[162] In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[163] The burden then shifts to the non-movant to demonstrate the existence of a genuine issue of material fact.[164] "A fact is 'material' if its resolution could affect the outcome of the action,"[165] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[166] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[167]

---

[162] Fed. R. Civ. P. 56(a).
[163] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[164] *See id*. at 323.
[165] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[166] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[167] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[168] Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[169] Parties may cite to any part of the record, or bring evidence in the motion and response.[170] By either method, parties need not proffer evidence in a form admissible at trial,[171] but must proffer evidence substantively admissible at trial.[172]

### c.   Analysis

#### i.  *Plaintiff's Claims against Vela*

The Court considers briefly the status of the Plaintiff's claims against Vela. Defendants argue that Plaintiff's claims against Vela are barred by res judicata.[173] In support, Defendants request the Court to judicially notice another civil action in which Plaintiff's claims against Vela were previously dismissed.[174] Plaintiff does not respond to this argument.

Res judicata has four elements: "(1) the parties are identical or in privity; (2) the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim was involved in both actions."[175]

Here, all the elements of res judicata are met. Plaintiff brought a previous case against Vela regarding the same incident and alleging the same causes of action,[176] and a final judgment

---

[168] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).

[169] *See* Fed. R. Civ. P. 56(e).

[170] *See* Fed. R. Civ. P. 56(c).

[171] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

[172] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").

[173] Dkt. No. 42 p. 2, ¶ 2.01 n. 1.

[174] *See Pena et al. v. Vela*, 7:16-cv-00638, Dkt. Nos. 11 (Order Dismissing Plaintiff's Claims), 12 (Final Judgment). This is judicially notice pursuant to Fed. Evid. R. 201.

[175] *Meyers v. Textron, Inc.*, 540 F. App'x 408, 410 (5th Cir. 2013).

[176] *Pena et al. v. Vela*, 7:16-cv-00638, Dkt. No. 11 (Order Dismissing Plaintiff's Claims).

was issued.[177] Accordingly, regardless of the status of Plaintiff's claims against Vela upon remand, the Court finds such claims are barred by res judicata and are **DISMISSED WITH PREJUDICE**.

### ii. *Qualified Immunity*

The sole issue remaining is whether Salinas and Solis are entitled to qualified immunity. Defendants argue the summary judgment evidence establishes that "Salinas' use of a Taser to stop [Plaintiff] from fleeing was not excessive to the need and [Salinas] did not apply a subsequent electric charge to [Plaintiff] after she struck the ground."[178] Defendants likewise argue that "Plaintiff has no evidence to establish Solis' order for Salinas to deploy her Taser violated [Plaintiff's] clearly established constitutional rights."[179]

Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available.[180] But where factual disputes exist, the Court accepts Plaintiff's version.[181] However, to overcome qualified immunity, Plaintiff bears the burden of negating the defense and "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct."[182] To meet her burden Plaintiff must show two things: (1) that the allegations make out a constitutional violation, and (2) that "the conduct was 'objectively unreasonable in light of clearly established law.'"[183]

Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the

---

[177] *Id.* Dkt. No. 12.
[178] Dkt. No. 42 pp. 1–2 ¶ 1.01.
[179] *Id.* at p. 2.
[180] *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).
[181] *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016).
[182] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).
[183] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

particular case at hand."[184] Here, the Court first considers whether Plaintiff meets her burden of demonstrating the Officers' conduct was objectively unreasonable in light of clearly established law at the time the event occurred.

A right is clearly established if a reasonable official would understand that what he is doing violates that right.[185] An official's actions are held to be reasonable unless "all reasonable officials" in the same circumstances would have known that the conduct violated the plaintiff's asserted rights.[186] The focus of the analysis is on whether an official had "fair notice" that the conduct was unreasonable and is judged against "the backdrop of the law at the time of the conduct."[187]

To find an official had fair notice "there must be a controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[188] The Fifth Circuit has noted that, "[e]xcessive force incidents are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity."[189] However, "this does not mean that 'a case directly on point' is required."[190] Rather, "existing precedent must have placed the statutory or constitutional question 'beyond debate.'"[191] "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"[192]

---

[184] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[185] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[186] *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

[187] *Brosseau v. Haugen*, 543 U.S. 194, 198  (2004).

[188] *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (internal quotation marks and citation omitted).

[189] *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 n.1 (5th Cir. 2009); *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987) ("[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation omitted)).

[190] *Cooper*, 844 F.3d at 524 (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)).

[191] *Id.*

[192] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

The now Court considers whether Plaintiff has met her burden to overcome qualified immunity in relation to Salinas and Solis.

### 1.  Salinas

Plaintiff fails to meet her burden to demonstrate that Salinas is not entitled to qualified immunity. Plaintiff points to no case directly on point, and this Court could find none. Nor does Plaintiff provide any cases that support finding the right was clearly established such that the violation was beyond debate. Thus, regardless of whether the tasing constituted excessive force, Salinas is entitled to qualified immunity. The Court concludes, given the totality of the circumstances, that Salinas was not on notice that utilizing a Taser to deliver a single charge to prevent Plaintiff from running into  traffic would constitute excessive force.

In Fourth Amendment excessive force cases, the reasonableness question amounts to "whether the totality of the circumstances justifies a particular sort of seizure."[193] In *Graham v. Connor*, the Supreme Court indicated that factors to consider include the severity of the crime, whether the actor poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.[194] "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[195]

Although there is no case directly on point, a review of case law regarding each of the *Graham* factors is helpful. Considering the first factor, the severity of the crime, the more minor and non-violent the crime, the more likely that the use of a Taser will be deemed objectively

---

[193] *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).
[194] 490 U.S. 386, 396 (1989).
[195] *Id.*

unreasonable.[196] The severity of the crime is judged from the perspective of the officer at the time; thus, officers may be entitled to qualified immunity even if they are mistaken about the severity of the crime.[197]

The next factor is the immediacy of the danger posed. This issue is considered from the perspective of the officer, and the suspect's subjective state of mind is not relevant.[198] Plaintiff provided no case law based on similar facts, namely where a suspect has been tased by an officer for the suspect's own safety. The nearest analog is a Fourth Circuit case, *Estate of Armstrong v. Village of Pinehurst*, in which officers tased a mentally-ill individual who was a danger only to himself and offered "stationary and non-violent resistance" to the officers attempting to arrest him.[199] In those circumstances, the Fourth Circuit held that even though the tasing constituted excessive force, the officers nonetheless were entitled to qualified immunity.[200]

The final factor is whether an individual was fleeing or resisting arrest. The Fifth Circuit has held it objectively reasonable for officers to chase and taser a fleeing suspect, even if that person is only reasonably suspected of a misdemeanor and the suspect did not otherwise pose a

---

[196] *See, e.g., Autin v. City of Baytown*, 174 F. App'x 183, 185 (5th Cir. 2005) (officer was not entitled to qualified immunity when a suspect was tased who "was at most committing the minor crime of criminal mischief, . . . posed no objective threat . . . and was not resisting or attempting to evade arrest"); *Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012) (finding officers were objectively unreasonable in their use of force for tasing a suspect who was arrested for disorderly conduct and was attempting to comply with the officers' commands, was not a threat to the officers or others, and was not attempting to flee); *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (holding the use baton and Taser was objectively unreasonable where a suspect merely made an off-color joke, was not resisting arrest, was not a threat to the officers, and did not attempt to flee).

[197] *See, e.g., Rakestrau v. Neustrom*, No. 11-CV-1762, 2013 U.S. Dist. LEXIS 51182, at *32 (W.D. La. Apr. 8, 2013) (holding the use of two charges of a taser was objectively reasonable when officer did not know severity of the crime "beyond the reasonable suspicion of a drug transaction");

[198] *See Murray-Ruhl*, 246 F. App'x 338, 350 (6th Cir. 2007) ("the subjective intent of the victim—unavailable to the officers who must make a split-second judgment—is irrelevant to the question whether his actions gave rise to a reasonable perception of danger."); *United States v. Serrata*, 425 F.3d 886, 905 (10th Cir. 2005) (holding the victim's "state of mind is irrelevant, as the force would have been excessive regardless of [the victim's] subjective state of mind."); *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997) (finding that "evidence outside the time frame of the shooting is irrelevant and prejudicial" and excluding the victim's subjective intent to commit suicide by police).

[199] 810 F.3d 892, 910 (4th Cir. 2016).

[200] *Id.*

threat.[201] However, the Fifth Circuit has found excessive force when officers tased suspects of minor crimes, such as criminal mischief or resisting arrest, when those suspects *were not* fleeing, resisting the officer, or posing a threat to the safety of the officers or others.[202] Additionally, the Fifth Circuit held that tasing a fleeing suspect, even if the taser is used in a manner that violates department guidelines, does not amount to objectively unreasonable use of force.[203] Further, where a suspect ignores multiple requests and warnings and continued to resist arrest, the Fifth Circuit has held the use of a Taser is objectively reasonable.[204] However, Fifth Circuit caselaw "makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced."[205]

Sister circuits have similarly held that where a misdemeanant is not resisting arrest or fleeing the use of a Taser is not justified, but where the suspect is fleeing or resisting arrest then the use of a taser is objectively reasonable. In *Goodwin v. City of Painesville*, the Sixth Circuit denied qualified immunity to police officers who had entered the plaintiff's home, where they gratuitously and repeatedly applied a Taser after all resistance had ceased.[206] In *Brown v. City of Golden Valley*, a police officer used a Taser on the plaintiff because she had disobeyed two orders to end her call with a 911 operator while sitting in the passenger seat of a car the officers had pulled over.[207] In both cases, the courts denied qualified immunity largely because the

---

[201] *Zimmerman v. Cutler*, 657 F. App'x 340, 347 (5th Cir. 2016); *see also Batiste v. Theriot*, 458 F. App'x 351, 355 (5th Cir. 2012) (use of a taser reasonable on a fleeing suspect with a felony warrant).
[202] *See, e.g., Autin*, 174 F. App'x at 185; *Massey*, 477 F. App'x at 263; *Newman*, 703 F.3d at 762.
[203] *Batiste*, 458 F. App'x at 355.
[204] *See, e.g., Pratt v. Harris Cty., Tex. (In re Estate of Pratt)*, 822 F.3d 174, 182 (5th Cir. 2016); *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (use of a Taser objectively reasonable when a suspect ignored repeated commands to turn around and give up his right arm to be handcuffed).
[205] *Cooper*, 844 F.3d at 524.
[206] 781 F.3d 314 (6th Cir. 2015).
[207] 574 F.3d 491, 494 (8th Cir. 2009).

defendant officers had used Tasers on plaintiffs who were neither fleeing nor actively resisting arrest.[208]

In contrast, in *McKenney v. Harrison*, the Eighth Circuit affirmed qualified immunity for an officer who had deployed a Taser on a fleeing misdemeanant, even though use of the Taser had led to the suspect's death.[209] Similarly, the Sixth Circuit held that "a misdemeanant, fleeing from the scene of a non-violent misdemeanor, but offering no other resistance and disobeying no official command," did not have a clearly established right not to be shot with a Taser.[210]

Before analyzing the claim against Salinas, the Court notes that the determination in the Fifth Circuit Appeal that Salinas had deployed excessive force was based on Plaintiff's allegations in her complaint that Plaintiff was not a criminal suspect at the time of the incident and that Salinas continued tasing after Plaintiff was on the ground.[211]

The summary judgment evidence contests both those assertions. First, it was reasonable for Salinas to believe that Plaintiff was a criminal suspect of a misdemeanor. It is undisputed that Plaintiff had resisted detainment and was in flight. Although the extent of Plaintiff's resistance is disputed, the evidence provided shows that Vela was attempting to restrain Plaintiff and Plaintiff was physically resisting in some manner.[212] This is sufficient for Salinas to reasonably believe that Plaintiff had at least committed a misdemeanor offense.[213]

---

[208] *See id*. at 499; *Goodwin*, 781 F.3d at 324.

[209] 635 F.3d 354 (8th Cir. 2011).

[210] *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012).

[211] *See* Dkt. No. 38 pp. 8–9.

[212] *See* Solis Dep. 112:23–113:1; Salinas Dep. 46:12–16; Vela Dep. 53:1. Notably, although Plaintiff provides an affidavit swearing that she did not "kick" Vela, Plaintiff's deposition, affidavit, and motion response are silent as to whether Plaintiff struck Vela or otherwise resisted.

[213] *See* Tex. Penal Code § 38.03(a),(b) (LexisNexis, Lexis Advance through the 2017 Regular Session and 1st C.S., 85th Legislature) (providing resisting a peach officer who is effecting an arrest or search is an offense and it is no defense if the arrest or search is unlawful).

Second, although Plaintiff's pleadings asserted that Salinas "delivered more than one electrical charge" to Plaintiff after she was on the ground,[214] Salinas' testimony and the Taser report indicate that Salinas only applied one electrical charge.[215] Notably, Plaintiff does not contest this fact,[216] and thus, this evidence is uncontroverted. Accordingly, the evidence provided at summary judgment undermines the two grounds upon which the Fifth Circuit Appeal based its finding of an excessive force claim against Salinas.

Further, it was reasonable for Salinas to believe that the terrified and fleeing Plaintiff posed a danger to herself and possibly other motorists by running into traffic. Although Plaintiff argues that Salinas did not know if Plaintiff would run into Mirasoles street, the issue here is whether it was reasonable for Salinas to believe that Plaintiff posed a danger to herself and others.[217] The evidence indicates that Plaintiff was frightened and running as fast as possible away from the officers.[218] Salinas and Solis both testified that they saw some kind of vehicle that could have struck Plaintiff.[219] Regardless of whether Salinas was ultimately correct in her determination of the danger posed to Plaintiff, the evidence indicates such a belief was reasonable in the heat of the moment.

Accordingly, the Court now turns to its analysis of Plaintiff's claim against Salinas. Considering each of the *Graham* factors, Salinas' decision to tase Plaintiff, could be objectively reasonable: Salinas reasonably believed Plaintiff was a misdemeanant who was fleeing arrest and posed a danger to herself and others. In such circumstances the use of a Taser may be objectively reasonable. However, the Court need not decide whether the tasing constitutes excessive force,

---

[214] *See* Dkt. No. 41 p. 8, ¶ 6.25.
[215] Dkt. No. 42 Salinas Dep. 99:16–25; pp. 121–122 (Exhibit D, Taser Report).
[216] *See* Dkt. No. 45.
[217] *See Graham* 490 U.S. at 396.
[218] *See* Dkt. No. 45-5 Plaintiff Dep. 49:13-19.
[219] Dkt. No. 45-5 Salinas Dep. 123:11–16; Dkt. No. 42 Solis Dep. 124:24–125:3.

because the case law does not establish that any violation was so clearly established that Salinas would have fair notice that her action was objectively unreasonable.

Numerous courts have held that where a suspect is fleeing or resisting arrest then officers are justified in utilizing a Taser to subdue the suspect, even if the individual is only reasonably suspected of committing a misdemeanor.[220] Additionally, there is no case on point that indicates that an officer who delivers a single Taser charge to a fleeing suspect who is only a danger to themselves would be engaging in excessive force. Plaintiff points to no case supporting such a finding. Indeed, the most analogous case found that the contours of the right to not use a taser against someone for their own safety were not established in 2011.[221] Based on the lack of any case law on point, the Court must conclude that even if the tasing were to constitute excessive force, which the Court need not now determine, Salinas did not have fair notice that it would be a violation, and thus, is entitled to qualified immunity.

Accordingly, the Court concludes that Salinas is entitled to qualified immunity and Plaintiff's excessive force claim against her is **DISMISSED WITH PREJUDICE**.

### 2. Solis

For similar reasons as those just described, Plaintiff fails to meet her burden to overcome Solis' assertion of qualified immunity. Plaintiff again points to no case directly on point regarding Solis' actions that would indicate any constitutional violation was clearly established, nor does she provide cases demonstrating the right was beyond debate. Thus, regardless of whether Solis' order for Salinas to tase Plaintiff constituted excessive force, Solis is entitled to qualified immunity.

---

[220] *See, e.g., Cockrell*, 468 F. App'x at 495; *McKenny*, 635 F.3d 354; *Zimmerman*, 657 F. App'x at 347.
[221] *See Estate of Armstrong*, 810 F.3d at 910.

Section 1983 does not create vicarious or *respondeat superior* liability.[222]   Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a "sufficient causal connection" between the supervisor's conduct and the constitutional violation.[223]   A supervisory official is held to a standard of "deliberate indifference," which requires proof that the supervisor "disregarded a known or obvious consequence of his action."[224]

Here, Solis faced similar circumstances as those facing Salinas. Like Salinas, Solis had reasonable suspicion that Plaintiff had engaged in criminal activity. The evidence presented indicates Plaintiff had resisted Vela's attempts to detain her, was fleeing and unresponsive to commands, and posed a possible danger to herself.

In these circumstances, given the case law as previously explained, Solis was not on notice that ordering Salinas to tase Plaintiff would be objectively unreasonable, and thus, did not display deliberate indifference to a known or obvious consequence to his action. Therefore, regardless of whether Solis' order constituted an excessive force violation, in the absence of any case on the point, the Court concludes that Solis is entitled to qualified immunity and Plaintiff's claims against him must be **DISMISSED WITH PREJUDICE**.

## IV.   HOLDING

For the foregoing reasons, the Court makes the following orders:

- Defendants' motion for summary judgment[225]   is **GRANTED**; all Plaintiffs' claims against Defendants are **DISMISSED WITH PREJUDICE**. Additionally, to the

---

[222] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).
[223] *Thompkins*, 828 F.2d at 304; *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("The misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor.").
[224] *Southard*, 114 F.3d at 551 (internal quotation marks omitted).
[225] Dkt. No. 42.

extent that Plaintiff's claims against Vela are at issue they are are **DISMISSED WITH PREDJUDICE**.

- To the extent that Defendants' motions[226] to dismiss remain pending upon remand to this Court, the motions are **GRANTED** on the basis of qualified immunity consistent with this Court's ruling on the motion for summary judgment.

- No further claims remain in Plaintiff's complaint and accordingly, Plaintiff's entire complaint is **DISMISSED WITH PREJUDICE**.

- Plaintiff's motion[227] for a status conference is **DENIED as moot**.

- Pursuant to Rule 58, a final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 8th day of March, 2019.

_____
Micaela Alvarez
United States District Judge

---

[226] Dkt. No. 18 (motion to dismiss filed by Solis); Dkt. No. 19 (motion to dismiss filed by Salinas).
[227] Dkt. No. 47.